```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Cynthia M. Dore**

    v.                                           Case No. 18-cv-950-PB
                                                      Opinion No. 2019 DNH 154

**Andrew Saul, Commissioner**
**Social Security Administration**

### MEMORANDUM AND ORDER

Cynthia Dore challenges the denial of her applications for disability insurance benefits and supplemental security income pursuant to 42 U.S.C. § 405(g). She contends that the Administrative Law Judge ("ALJ") improperly evaluated medical opinions in her record. The Commissioner, in turn, moves for an order affirming the ALJ's decision. I deny Dore's motion and affirm the Commissioner's decision.

### I. BACKGROUND

**A. Procedural Facts**

Dore is a 64-year-old woman with 11th grade education. She worked a variety of jobs in the retail industry, including as a retail manager and a convenience store cashier. She alleged disability as of November 2014, due to degenerative disc disease of the spine, anxiety disorder, and depressive disorder.

Dore's applications were initially denied in October 2015, and on reconsideration in February 2016. On November 2, 2017, she testified at a hearing before ALJ Paul Martin, who

ultimately denied Dore's claims.  See Tr. 18-32.  The Appeals Council denied her request for review in August 2018, rendering the ALJ's decision the final decision of the Commissioner.  See Tr. 7-9.  Dore now appeals.

**B.   Medical Opinion Evidence**

In September 2015, Dr. Robert Phelps, an orthopedic surgeon, performed a consultative examination of Dore.  She exhibited impaired ability to perform postural changes, abnormal posture with elevation of the left shoulder and the left pelvis, limited range of motion of the lumbosacral spine, increased left leg pain with lumbar flexion, left thigh pain with strength testing on the left, sensory impairment of the left foot, impaired sharp-dull discrimination of the right foot, and increased low-back pain with straight leg raising on the left.  Dr. Phelps diagnosed her with neck pain, left upper extremity weakness, ruptured discs in the lower back, mobility impairment with degenerative disc disease, and a right thoracic left lumbar scoliosis.  He opined that Dore had markedly limited abilities to lift and carry even occasionally, stand, walk, and push or pull at the left lower extremity, as well as markedly to severely limited abilities to bend, climb, balance, stoop, kneel, crouch, and crawl.  Tr. 342.

The following month, Dr. Donald Trumbull, a state agency physician, reviewed Dore's record, including Dr. Phelps' report.

2

He opined that Dore's degenerative disc disease was a severe impairment, but that she retained the residual functional capacity ("RFC") to perform the requirements of light work. Specifically, she could lift 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours, and sit for 6 hours in an 8-hour workday. Dr. Trumbull also indicated that Dore was limited to frequent stooping and climbing of ramps or stairs and occasional kneeling, crouching, crawling, and climbing of ladders, ropes, or scaffolds. Tr. 44-46.

In February 2016, another state agency physician, Dr. Sharon Hogan, reviewed the medical record and likewise opined that Dore could perform light work. According to Dr. Hogan, Dore was limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, or scaffolds. Tr. 69-71.

Orthopedic surgeon Dr. Frank Graf examined Dore and reviewed her medical records in July 2017. He diagnosed her with chronic lumbosacral musculoskeletal pain with left lower extremity radiculopathy in an L5 dermatomal pattern, as well as sensory and motor system disorder with abnormal cranial nerve examination and abnormal reflex activity. Dore reported frequent falls due to loss of coordination and balance. Dr. Graf opined that her pain symptoms would constantly interfere with the attention and concentration needed to perform even

3

simple work tasks.  According to Dr. Graf, Dore was limited to less than 2 hours of sitting, standing, or walking in an 8-hour workday, could stand only for 5 minutes and sit for 10 minutes at a time, would require the ability to shift positions at will and frequent unscheduled breaks, was advised to use a cane, was not capable of lifting more than 10 pounds, and was likely to miss more than 4 days of work every month.  Tr. 739-47.

On November 2, 2017, Dr. John Kwock, an orthopedic surgeon, testified at the administrative hearing after reviewing Dore's medical file, including all the opinion evidence.  Dr. Kwock opined that Dore had degenerative disc disease of the cervical, lumbar, and thoracic spine, but that these impairments did not meet or equal the criteria of any listed impairment.  According to Dr. Kwock, Dore retained the capacity to perform light work, that is, she could lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, and stand or walk for 6 hours in an 8-hour workday.  He further testified that she could frequently balance and kneel, occasionally stoop, crouch, and climb stairs or ramps, and could never crawl or climb ladders or scaffolds.  Tr. 897-900.

Dr. Kwock dismissed greater restrictions to Dore's RFC as based on subjective reporting that was not consistent with imaging results and other objective medical evidence.  Specifically, he disagreed with Dr. Graf's opinion because the

4

imaging studies in the record, including cervical and lumbar spine X-rays done in June and August 2014 and MRIs done in May 2015 and August 2017, indicated that Dore's degenerative changes remained generally mild. Although the 2017 MRI included a finding of chronic severe degenerative disc disease at L5-S1, Dr. Kwock explained that there was no significant spinal stenosis and no significant disc herniation. Dr. Kwock acknowledged that there were positive examination findings in the record, such as reduced range of motion, slow gait, positive straight leg raise, decreased sensation, muscle weakness, and hyperactive reflexes. But he noted that those findings were not consistent from one exam to the next and that the record also reflected many negative findings in those same areas. Finally, Dr. Kwock testified that Dore's use of a cane was not medically necessary given general findings of no significant motor weakness in her upper or lower extremities. Tr. 901-11.

### C. **The ALJ's Decision**

The ALJ assessed Dore's claim under the five-step, sequential analysis required by 20 C.F.R. §§ 404.1520 and 416.920. At step one, he found that Dore had not engaged in substantial gainful activity since November 26, 2014, her alleged disability onset date. Tr. 21. At step two, the ALJ found that Dore's degenerative disc disease of the spine was a severe impairment, but that her anxiety disorder and depressive

5

disorder were not severe.  Tr. 21-23.  At step three, the ALJ determined that none of Dore's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 23-24.

The ALJ then found that Dore had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she was limited to simple, unskilled work.  In addition, she could sit for 6 hours, stand or walk for 6 hours, climb ramps and stairs occasionally, crouch and stoop occasionally, balance and kneel frequently, and could never crawl or climb ropes or scaffolding.  Tr. 24.

The ALJ gave "great weight" to Dr. Kwock's reviewing opinion, finding it well reasoned and consistent with the medical record, including imaging studies and normal motor strength findings.  Tr. 27-28.  He likewise gave "great weight" to the opinions of non-examining state agency consultants Drs. Trumbull and Hogan.  According to the ALJ, their opinions were consistent with the record as a whole, and subsequent treatment notes did not show a worsening of Dore's condition.  Tr. 28-29.

The ALJ assigned "little weight" to Dr. Graf's opinion, finding that the limitations he identified were "not fully consistent with the medical evidence of record" and "inconsistent with the claimant's stated activities of daily living and her treatment plan."  Tr. 29-30.  The ALJ also noted

that he was satisfied with Dr. Kwock's explanation as to why Dr. Graf's opinion was not well supported by the objective testing. Tr. 28.  Lastly, the ALJ gave "little weight" to Dr. Phelps' opinion, finding that it was "inconsistent with the results of the physical examination he performed," which identified "few motor strength abnormalities."  Tr. 30-31.

Relying on the testimony of a vocational expert, the ALJ then found at step four that Dore could perform her past relevant work as a cashier.  Tr. 31-32.  Accordingly, the ALJ concluded that Dore had not been disabled from the alleged disability onset date through the date of his decision.  Tr. 32.

## II. **STANDARD OF REVIEW**

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  See 42 U.S.C. § 405(g).  That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence.  Id.  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."

7

Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

### III. ANALYSIS

Dore challenges the ALJ's decision on the ground that the ALJ improperly weighed the medical opinion evidence. Because substantial evidence supports the ALJ's evaluation of those opinions, Dore cannot sustain her burden of establishing that remand is necessary.

An ALJ must consider "medical opinions" provided by both treating and nontreating "acceptable medical sources," "together

8

with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(a)-(b), 416.927(a)-(b); see Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In addition, the ALJ must address each medical opinion and – if it conflicts with the RFC finding – must explain why it was not adopted. SSR 96-8p, 1996 WL 374184, at *7.

The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). When weighing a medical opinion, an ALJ must consider, inter alia, the nature of the relationship between the medical source and the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source of the opinion is a specialist. See id. §§ 404.1527(c), 416.927(c).

An ALJ is generally required to give more weight to the opinion of a source who has examined a claimant than to the opinion of a nonexamining source. Id. §§ 404.1527(c)(1), 416.927(c)(1). "However, just as an ALJ may properly decline to give controlling weight to the opinion of a treating source, an ALJ may also discount the weight given to the opinion of an

examining source in favor of the opinion of a nonexamining source." Wall v. Berryhill, 2019 DNH 103, 2019 WL 2723887, at *4 (D.N.H. June 27, 2019) (internal quotation marks omitted).

Here, the ALJ gave "great weight" to the reviewing opinions Drs. Kwock, Trumbull, and Hogan, and "little weight" to the opinions of one-time examining consultants Drs. Graf and Phelps. I address each in turn.

### 1. Dr. Kwock's Opinion

Dr. Kwock testified at the administrative hearing after reviewing Dore's medical file. The ALJ gave "great weight" to Dr. Kwock's opinion that Dore could perform light work, with some postural limitations that the ALJ incorporated into the RFC finding. The ALJ's assessment is supported by evidence that is "adequate" to persuade "a reasonable mind." See Irlanda Ortiz, 955 F.2d at 769 (internal quotation marks omitted).

The ALJ reasoned that Dr. Kwock is a specialist in orthopedic surgery who reviewed the full evidence of record and whose opinion was consistent with that record. Those are permissible reasons for assigning great weight to the opinion. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); id. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues

related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); id. §§ 404.1527(c)(6), 416.927(c)(6) ("the extent to which a medical source is familiar with the other information in [a claimant's] case record [is a] relevant factor[] that we will consider").

Dr. Kwock also presented relevant evidence to support his medical opinion that Dore could perform modified light work. Cf. id. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). He explained that the imaging studies, including the 2015 lumbar MRI and the 2017 lumbar MRI, indicated only a mild to moderate degenerative disc disease. As a result, Dr. Kwock believed that Dore's subjective complaints could not be attributed to "anatomical changes or physiological changes." Tr. 904.

Further, as both Dr. Kwock and the ALJ recognized, although there are positive examination findings in the record, such as reduced range of motion, slow gait, positive straight leg raise, decreased sensation, muscle weakness, and hyperactive reflexes, those findings were not consistent from one exam to the next. The record contains many intact findings, including full range of motion of all joints, normal sensation, normal reflexes, normal muscle strength, negative straight leg raise test, and

normal gait.  See Tr. 26, 28, 30 (citing record sources).  The inconsistency in the examination findings and the mild degenerative disc changes shown in the imaging studies support the ALJ's decision to credit Dr. Kwock's opinion that Dore could perform light work.  Cf. Irlanda Ortiz, 955 F.2d at 769 (conflicts in the evidence are for the ALJ to resolve).

Dore criticizes the ALJ's assessment because Dr. Kwock based his opinion primarily on objective imaging and discounted her subjective complaints.  But the regulations do not require a medical source to consider a claimant's subjective symptoms.  Rather, it is the ALJ who has the responsibility to assess a claimant's RFC based on the entire record, including any subjective complaints.  See SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018).  The ALJ cannot disregard the claimant's statements about her symptoms solely because they are unsubstantiated by objective medical evidence.  See SSR 16-3p, 2016 WL 1119029, at *5.  Rather, an inconsistency between subjective complaints and objective medical evidence is just "one of the many factors" to consider in weighing the claimant's statements.  Id.  Other factors the ALJ must consider, known as the "Avery factors" in the First Circuit, include (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or symptom; (3) any precipitating and aggravating factors; (4)

12

the effectiveness of any medication currently or previously taken; (5) the effectiveness of non-medicinal treatment; (6) any other self-directed measures used to relieve pain; and (7) any other factors concerning functional limitations or restrictions. Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986); see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). But the ALJ is not required to address every Avery factor in his written decision for his evaluation to be supported by substantial evidence. Deoliveira v. Berryhill, 2019 DNH 001, 2019 WL 92684, at *5 (D.N.H. Jan. 2, 2019). Instead, the decision need only "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9.

Here, the ALJ gave sufficiently specific reasons for discounting Dore's subjective complaints. First, the ALJ cited the inconsistency between her complaints and the objective medical evidence, discussed above. Cf. id. at *4 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"). Second, the ALJ considered Dore's daily activities, which included handling personal care, cleaning, cooking, doing

laundry, and playing with her granddaughter. The ALJ supportably concluded that this level of activity is consistent with a capacity for light work. Cf. Coskery, 892 F.3d at 7 (permissible for ALJ to infer that claimant could perform light work based on ability to do activities such as household chores, personal care, dog care, and grocery shopping). Third, the ALJ explained that Dore's treatment plan was generally conservative, involving physical therapy, home exercise, and pain management, and that she had failed to follow through on some treatment recommendations.[1] Cf. Bourque v. Berryhill, 2018 DNH 149, 2018 WL 3536087, at *10 (D.N.H. July 23, 2018) (ALJ permissibly concluded that "consistent, conservative courses of treatment prescribed by medical professionals . . . does not conflict with an RFC of light work"). Accordingly, the ALJ's decision to discount Dore's subjective complaints is entitled to deference.

Because the ALJ properly considered Dore's symptoms and gave adequate reasons, supported by the record, for assigning "great weight" to Dr. Kwock's opinion, there was no error.

---

[1] The ALJ noted that Dore had discontinued physical therapy in September 2017 after only three sessions. Tr. 27. She argues that the ALJ erroneously considered her noncompliance with treatment without exploring possible reasons for that noncompliance, as required by SSR 16-3p. Dore's explanation that she stopped physical therapy because her provider told her to do so, however, is not consistent with the record. She was encouraged to switch her therapy to a different provider. Tr. 814. The ALJ was therefore entitled to consider her noncompliance as a factor in discounting her complaints.

14

2. <u>Opinions of Drs. Trumbull and Hogan</u>

Dore next faults the ALJ for giving "great weight" to the opinions on two state agency reviewing physicians. Drs. Trumbull and Hogan both opined that Dore could perform light work, with some postural limitations. The ALJ reasoned that their opinions were consistent with the record and with Dr. Kwock's opinion. Dore's challenge to the ALJ's reliance on these opinions fails.

Dore argues that the ALJ improperly relied on the fact that the opinions of Drs. Trumbull and Hogan were consistent with Dr. Kwock's opinion. But a consistency of a medical opinion with other record evidence is among the factor that the regulations expressly recognize as relevant when weighing opinion evidence. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion.").

In any event, the ALJ discussed other reasons for the weight given to those opinions. Drs. Trumbull and Hogan reviewed the available medical record, including Dore's 2015 MRI that showed only mild degenerative disc disease. The ALJ supportably concluded that subsequent medical evidence, discussed above, was consistent with the evidence they had reviewed. See Byron v. Saul, 2019 DNH 131, 2019 WL 3817401, at *6 (D.N.H. Aug. 14, 2019) (ALJ may rely on medical opinion based

15

on incomplete record "where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not clearly inconsistent with, the reviewer's assessment") (internal quotation marks omitted). Finally, the ALJ supportably found that Dore's daily activities, discussed above, were consistent with the opinions finding that she could do light work. Accordingly, there was no error in the ALJ's weighing of the state agency physicians' opinions.

3. Dr. Graf's Opinion

Dr. Graf is a one-time examining orthopedic surgeon who opined that Dore's postural limitations precluded even sedentary work and that her pain and other symptoms rendered her incapable of performing even low-stress jobs. The ALJ assigned "little weight" to Dr. Graf's opinion, finding that the limitations he identified were not consistent with the medical record, Dore's daily activities, or her treatment plan. Substantial evidence supports the ALJ's assessment.

First, the ALJ pointed out that a week prior to Dr. Graf's examination, Dore had a full physical examination, which showed normal gait and station, normal mobility in her neck and spine, intact sensation, and 5/5 strength in the upper and lower extremities. Tr. 30. Those findings were inconsistent with Dr.

Graf's observations, including that Dore had difficulties walking and standing, a decreased range of motion in her spine, hyper-reflexivity, and sensory deficits.  Id.  The ALJ also correctly noted that other examinations showed negative findings in those areas and thus conflicted with Dr. Graf's opinion.  As to Dr. Graf's finding of hyper-reflexivity, the ALJ credited Dr. Kwock's opinion that such activity is unusual for Dore's impairment because degenerative disc disease typically causes hypo-reflexive activity.  Id.  Such conflicts in the evidence are for the ALJ to resolve and constitute permissible reasons to discount Dr. Graf's opinion.  See Purdy, 887 F.3d at 13.

     Next, the ALJ reasoned that Dr. Graf's opinion was inconsistent with Dore's daily activities.  See Dimambro v. U.S. Soc. Sec. Admin., 2018 DNH 004, 2018 WL 301090, at *12 (D.N.H. Jan. 5, 2018) (inconsistency with daily activities can be a "good reason" to give an opinion less weight).  Dr. Graf opined that Dore had extreme limitations, including being able to stand only for 5 minutes and sit only for 10 minutes at a time, but she reported handling personal care, cleaning, cooking, doing laundry, and playing with her granddaughter.  In addition, Dore's treating providers encouraged her to exercise.  See, e.g., Tr. 803.  Although Dore reported some restrictions in those activities due to pain, they remain inconsistent with the disabling limitations identified by Dr. Graf.

The ALJ also found Dr. Graf's opinion inconsistent with Dore's conservative treatment and her non-compliance with physical therapy. Finally, the ALJ noted that he was satisfied with Dr. Kwock's explanation as to why the opinion of Dr. Graf was not well supported by the objective testing. Tr. 28, 30. Adjudicators are entitled to rely on such findings to credit opinion evidence. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

4. Dr. Phelps' Opinion

Dr. Phelps examined Dore on one occasion and opined that she had numerous marked limitations, including in her abilities to stand, walk, lift, and carry. The ALJ assigned "little weight" to this opinion, reasoning that it was inconsistent with Dr. Phelps' own examination findings and with the record as a whole. The ALJ's assessment is entitled to deference.

The ALJ permissibly concluded that Dr. Phelps' examination findings did not show such extreme impairment. Although Dore exhibited abnormal posture and reduced lumbar range of motion, she had good range of motion in the cervical spine, upper extremities, and lower extremities. In addition, Spurling's test was only mildly painful with moderate downward pressure; her motor strength was generally intact; her reflexes were good; and straight leg raise was negative on the right and caused back pain, but no leg pain, on the left. Tr. 340-41. Dore maintains that the ALJ did not consider all the examination findings and

relied too heavily on her intact motor strength.  But Drs. Trumbull, Hogan, and Kwock considered those examination findings and found, consistent with the ALJ's RFC, that Dore was not as limited as Dr. Phelps opined.

The ALJ also permissibly concluded that Dr. Phelps' opinion was inconsistent with the record as a whole.  As discussed above, the ALJ thoroughly considered Dore's record, including the opinions of Drs. Kwock, Trumbull, and Hogan, the imaging studies showing mild to moderate disease overall, the treatment notes indicating many normal or only slightly abnormal findings, recommendations for conservative treatment and noncompliance; and Dore's daily activities.  The ALJ's evaluation of Dr. Phelps' opinion is therefore supported by substantial evidence.

## IV. CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Commissioner's motion to affirm (Doc. No. 9) and deny Dore's motion for an order reversing the Commissioner's decision (Doc. No. 8).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 17, 2019

cc: D. Lance Tillinghast, Esq.
    Amy C. Bland, Esq.